<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHARON DAVIS, : : Plaintiff, : : v. : : CITY OF NEWARK, ET AL., : : Defendants. : : | Civ. No.04-5317 (GEB) **MEMORANDUM OPINION** |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the following: (1) the motion for summary judgment filed by Defendants the City of Newark and the Newark Police Department (collectively the "Newark Defendants") (Doc. No. 88); (2) the motion for summary judgment filed by Defendants Anthony F. Ambrose, III, Irving Bradley, Jr., John Scott-Bey and Adolph Vasquez (collectively the "Individual Defendants") (all Defendants collectively, "Defendants") (Doc. No. 89); and (3) the motion for partial summary judgment filed by Plaintiff Sharon Davis ("Davis") (Doc. No. 90). All of the foregoing motions are opposed. The Court has considered the parties' various submissions and decided these motions without oral argument pursuant to Federal Rule of Civil Procedure 78. Having done so, the Court will dismiss the remaining counts of Davis' complaint with prejudice and deny the foregoing motions as moot for the reasons that follow.

**I.    BACKGROUND**

This employment discrimination case began on October 29, 2004, when Davis, then a

Newark Police Department Officer, filed a complaint that alleged Defendants discriminated against her on the basis of her race and gender in violation of federal and New Jersey law. On August 31, 2006, the Court dismissed several counts in Davis' complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]  Subsequently, Davis agreed to dismiss the surviving counts of her complaint, and appealed the Court's August 31, 2006 decision to the United States Court of Appeals for the Third Circuit. On August 5, 2008, a panel of the Third Circuit affirmed the Court's August 31, 2006 decision in large part, but remanded Davis' retaliation claims under Title VII and the New Jersey Law Against Discrimination (the "NJLAD") for this Court to consider in the first instance following recent Supreme Court and Third Circuit decisions. Thus, in light of the Third Circuit's August 5, 2008 decision, only Davis' retaliation claims under Title VII and NJLAD are at issue in the parties' present motions.

In their present motions, Defendants argue that Davis has failed to establish a *prima facie* case for retaliation under the familiar *McDonnell Douglas* framework. Alternately, Defendants argue that even if Davis has established a *prima facie* case, Defendants are entitled to summary judgment on the merits of Davis' remaining claims. For her part, Davis appears to argue that she is entitled to summary judgment on all of her remaining claims.[2] As noted above, the Court has considered the parties' submissions in connection with the present motions. In addition, the Court has reviewed Davis' complaint in light of the Third Circuit's August 5, 2008 decision.

---

[1] The spectrum of factual allegations and causes of action lodged in Davis' complaint were detailed in the Court's August 31, 2006 memorandum opinion. (Doc. No. 12) Because most of that information is no longer relevant, the Court simply references that memorandum opinion for the sake of economy.

[2] Davis' present motion is styled as one for "partial" summary judgment. Despite that label, it appears that Davis seeks summary judgment on all of her remaining claims.

Having done so, the Court concludes that Davis' retaliation claims fail as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6) and applicable jurisprudence. As a result, the parties' present summary judgment motions are moot, and as such, will be denied.

## II. DISCUSSION

On August 5, 2008, the Third Circuit remanded Davis' claims for retaliation under Title VII and the NJLAD. In doing so, the Third Circuit did not discuss in detail this Court's August 31, 2006 decision to dismiss Davis' retaliation claims pursuant to Fed. R. Civ. P. 12(b)(6). Rather, the Third Circuit simply instructed that this Court should evaluate Davis' retaliation claims in the first instance pursuant to: (1) *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); and (2) *Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006). Thus, this Court concludes that evaluation of Davis' retaliation claims pursuant to Fed. R. Civ. P. 12(b)(6) – the procedural standard applied in the Court's August 31, 2006 decision – in light of those cited cases is a both necessary and logical predicate to consideration of the parties' pending summary judgment motions. Finally, the Court notes that though Defendants' motions are couched as ones for summary judgment pursuant to Fed. R. Civ. P. 56, some of Defendants' arguments appear to sound procedurally in Fed. R. Civ. P. 12(b)(6) as Defendants argue at length that Davis has not stated a *prima facie* case of discrimination under Title VII or NJLAD. As such, this Court will review Davis' remaining claims pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. *See Ashcroft v. Iqbal*, -- U.S. --, --, 129 S. Ct. 1937, 1949-50 (2009); *Fowler*, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. *See Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." *Id.* A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *See id.*

**B.    Application**

**1.    Title VII Retaliation**

The Court first addresses Davis' claim that she was retaliated against in violation of Title VII. The anti-retaliation section of Title VII provides in pertinent part that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). In order to establish a *prima facie* case of retaliation under Title VII, a

4

plaintiff must allege that: (1) she engaged in an activity protected by Title VII; (2) she was thereafter subjected to an adverse employment action against her; and (3) there was a causal link between the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). With regard to the first element, Title VII protects "those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Id.* With regard to the second element, Title VII forbids an employer from taking "retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citing *Burlington N. & Santa Fe Ry. Co. V. White*, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006). Finally, with regard to the third element, a plaintiff must allege "a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 342. Applying that standard to Davis' complaint, each of Davis' retaliation arguments fail as a matter of law for the reasons that follow.      First, Davis claims that she was retaliated against based upon a report she submitted on February 2, 1998. In that report, Davis alleges that she described overhearing Officer John Reitmeyer complain to Officer John Costa that Davis was a "'a pain in his balls' because Davis was being paid overtime for medical treatment for an injury that occurred on-duty." As noted above, in order to establish the first prong of a *prima facie* retaliation claim, Davis must allege that she engaged in activity protected by Title VII. Here, however, Davis simply states that she overheard and complained about an offhanded, and not apparently discriminatory comment made by two fellow officers. Davis' pleading does not

5

attempt to articulate how Officer Reitmeyer's alleged use of the term "pain in his balls" on a single, apparently isolated occasion runs afoul of Title VII. Further, even if the use of that term on a single instance could plausibly be construed as discriminatory in a vacuum, its use in the context expressly alleged by Davis eliminates any doubt that it cannot form the basis of a Title VII retaliation claim. Here, Davis asserts that the comment was made in regard to Davis' "overtime pay for medical treatment that occurred on duty." That issue clearly has no relation whatsoever to activity protected by Title VII. As such, Davis' February 2, 1998 report cannot establish the first element of a *prima facie* retaliation claim as it does not constitute engagement in activity protected by Title VII.

Second, Davis claims that she was retaliated against based upon a request that she and Officer John LeBron made to be transferred to a different unit on March 5, 1999. According to Davis' pleading, this request was precipitated by an incident on February 17, 1999, in which Sergeant Heriberto Gonzalez "shot and killed his child's mother, Officer Magdaliz LaBoy, in front of their son and then shot and killed himself." Thereafter, Davis and Officer LeBron made their March 5, 1999 transfer request "do to circumstances surrounding the preferential treatment that had been given to Sergeant H. Gonzalez, making it possible to take these horrible actions." Davis then alleges that on March 16, 1999, she was called to meet with Sergeant Inez Gonzalez who requested that Davis amend her March 5, 1999 submission because "repercussions may occur as a result of Davis' comments." Beyond these assertions, Davis offers nothing more.

As noted above, in order to establish a *prima facie* retaliation claim, Davis must sufficiently allege that: (1) she engaged in an activity protected by Title VII; (2) she was thereafter subjected to an adverse employment action against her; and (3) there was a causal link

between the protected activity adverse employment action.  Davis' instant claim fails to establish all three elements.  First, Davis' bald, shocking, and completely unsupported allegation fails to adequately plead any activity protected by Title VII.  Indeed, it appears that the parties involved in this particular incident are Davis (an African-American female), Officer John LeBron (apparently male), Sergeant Heriberto Gonzalez (apparently a Hispanic male), and Sergeant Inez Gonzalez (apparently a Hispanic female).  Thus, Davis apparently alleges that she and a male officer were retaliated against by a Hispanic female officer for requesting a transfer based upon "preferential treatment" shown to a Hispanic male officer that made it "possible" for that male Hispanic officer to murder his child, the mother of his child, and then kill himself.  The Court concludes that detailed discussion of this unsupported and patently frivolous pleading merits little additional discussion.  However, the Court buttresses its conclusion by noting that Davis has failed to plead any adverse employment action taken as a result of her March 5, 1999 transfer request and, therefore, has of course not plead any causal connection.  As such, Davis has failed to plead a *prima facie* case of Title VII retaliation based upon her March 5, 1999 transfer request.

      Third, Davis claims that she was retaliated against based upon a report she submitted "in or about the late summer of 1999" after Davis "became aware that Officer Colon had his license suspended and he was allowed to be assigned to a desk job, which was in direct violation of the City of Newark Police Department's rules and regulations."  On September 23, 1999, after Davis submitted this report, she found the right rear tire of her car slashed.  Davis believed that action, "may have been in retaliation for report regarding Officer Colon."  As noted above, in order to establish the first prong of a *prima facie* retaliation claim, Davis must allege that she engaged in activity protected by Title VII.  Here, Davis' pleading is totally devoid of any information that

7

could allow the Court to even plausibly infer that her report regarding Officer Colon was an activity protected by Title VII. As such, this claim must fail because it does not satisfy the first element of a *prima facie* retaliation claim as it does not constitute engagement in activity protected by Title VII.

Fourth, Davis claims that she was retaliated against based upon a "general report" she submitted on November 16, 1999, regarding other officers smoking in the precinct which Davis claims was prohibited by a Newark City ordinance. A report about smoking in government buildings does not appear to be an activity protected by Title VII. Moreover, the Court also notes that Davis has failed to plead any adverse employment action taken as a result of her November 16, 1999 general report and, therefore, has of course not plead any causal connection. As such, Davis has failed to plead a *prima facie* case of Title VII retaliation based upon her November 16, 1999 general report.

Fifth, Davis claims that she was retaliated against based upon a report she submitted on September 13, 2001, that addressed "safety issues involved with working the Brazilian Festival." Davis' alleged concerns regarding the safety of working Newark's Brazilian Festival as a member of the Newark Police Department is not an activity protected by Title VII. Additionally, the Court notes that Davis has failed to plead any adverse employment action taken as a result of her September 13, 2001 report and, therefore, has of course not plead any causal connection. As such, Davis has failed to plead a *prima facie* case of Title VII retaliation based upon her September 13, 2001 report.

Sixth, Davis claims that she was retaliated against based upon a report she submitted on January 18, 2002, regarding her concerns that an officer she was training was not ready to

perform effectively. Davis' alleged concerns regarding the readiness of an officer she was training do not implicate activity protected by Title VII. Additionally, the Court notes that Davis has failed to plead any adverse employment action taken as a result of her January 18, 2002 report and, therefore, has of course not plead any causal connection. As such, Davis has failed to plead a *prima facie* case of Title VII retaliation based upon her January 18, 2002 report.

At this point in the chronology of Davis' factual allegations, the Court notes a critical assertion. Davis expressly states that on or about July 29, 2002, she was, "promoted to Detective and assigned to the South District Detective Squad." Thus, after the six distinct allegations of retaliation the Court has identified and discussed above, Davis, by her own admission, received a promotion – the very antithesis of an "adverse employment action" that is the bedrock of any retaliation claim. As the Court has already explained above, each of Davis' foregoing retaliation allegations fundamentally fail to state a *prima facie* case under applicable jurisprudence. Globally, however, the Court concludes that viewed in the factual context of Davis' subsequent promotion, all of Davis' foregoing retaliation claims are not just fatally implausible, they are impossible.

Continuing, next Davis alleges that, "[i]mmediately upon her promotion, Sgt. Adolph Vasquez called Davis into his office and told her that he heard she was a 'pain in the ass' and he expected to have no problems from her." Roughly eight months after this interaction, in April, 2003, Davis was interviewed by the Office of Internal Affairs (OIA) in connection with a "formal complaint" against Sergeant Vasquez made by Detective Eric Jackson. During that interview, which was videotaped, Davis "spoke of the cursing at Detectives by Sgt. Vasquez and the incident in which she was called into his office and called a 'pain in the ass.'" Davis alleges that

Sergeant Vasquez was allowed to view the videotape of Davis' interview with the OIA at some undefined point. Thereafter, on July 22, 2003, roughly three to four months after Davis' interview with the OIA, "[Davis] was informed by Lt. Cuccolo that she was being removed from the Squad based on recommendations made by Sgt. Vasquez."

      The Court concludes that Davis' forgoing allegation fails to establish the first element of a *prima facie* retaliation claim. Here, Davis asserts that on the very day she was promoted to Detective, she was told by Sergeant Vasquez that "he had heard that she was a 'pain in the ass' and he expected to have no problems from her." Eight months later, during an interview with the OIA regarding a "formal complaint" of an unspecified nature lodged by another (apparently male) Detective, Davis related two pieces of information: (1) that Sergeant Vasquez cursed at Detectives; (2) that Sergeant Vasquez had once, eight months previously, said that "he had heard" that Davis "was a 'pain in the ass'". The Court cannot conclude on the basis of these allegations that Davis' statements to the OIA can plausibly be construed as activity protected by Title VII. First, the very statement Sgt. Vasquez allegedly made on one occasion – "pain in the ass" – is clearly not discriminatory either on the basis of race or gender. Second, Davis has failed to establish that the OIA investigation in question has any connection whatever to an activity that is protected by Title VII. Instead, Davis' pleading states only that the OIA investigation was the result of a "formal complaint" by (apparently male) Detective Jackson. Further, in addition to relaying Sgt. Vasquez's "pain in the ass" comment, during her OIA interview Davis apparently also related that Sgt. Vasquez cursed at Detectives. Thus, in sum, Davis' pleading is totally devoid of factual allegations that plausibly suggest that Davis' videotaped interview with the OIA comprises participation in activity protected by Title VII. As such, Davis' retaliation claim

based upon these allegations must fail.

Finally, in the last handful of factual paragraphs in her complaint, Davis levies a blunderbuss of apparently retaliation based allegations, including that she was at some point assigned to hospital duty for an unspecified period, and that she was again transferred from one unspecified unit to another.  In dismissing these same claims in the August 31, 2006 decision, the Court stated that:

> there is no information provided in [Davis'] complaint to suggest what the standing procedure within the City of Newark's Police Department was regarding tour changes, i.e., whether tour changes are a necessary function of the department or something utilized in retaliation.  Because there is no known connection between the tour changes and the charges of retaliation, and because [Davis] does not allege that these tour changes resulted either in economic harm nor an alteration of job title, this Court does not find that Plaintiff has satisfied the prima facie factors requiring an adverse employment decision by an employer and a causal link between the protected activity and the adverse employment decision.

While the definition of "adverse employment decision" has changed, the Court concludes that its foregoing analysis remains appropriate following the *White* and *Moore* decisions.  Not only does Davis fail to allege "economic harm []or an alteration of job title", she also fails to allege that after January 14, 2004, she experienced any alteration to her employment that can be reasonably construed as retaliatory – including change of salary, change of shift, change of hours required, change of her essential job description.  Finally, the Court notes that in *White* the Supreme Court stated that actionable retaliatory employment actions are those that, "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *White*, 548 U.S. 53.  Here, Davis expressly alleges that after she was placed on hospital duty, she filed not less than four additional reports regarding various activities.

11

For all these reasons, the Court will dismiss Davis Title VII retaliation claim.

    **2.    NJLAD Retaliation**

As the Court noted in its August 31, 2006 decision, "the prima facie requirements for retaliation under Title VII miror the requrements under NJLAD." In light of the Court's foregoing conclusion that Davis' complaint fails to state a prima facie case for retaliation under Title VII, the Court will dismiss Davis' NJLAD retaliation claim for the same reason.

    **3.    Davis' Retaliation Claims are Dismissed With Prejudice**

As the Court's foregoing analysis makes clear, Davis' pleading failures are fundamental. In certain instances, her allegations of retaliation appear patently frivolous. In the Court's August 31, 2006 order, Davis' retaliation claims were expressly dismissed with prejudice. Because the Court again concludes that amendment would be futile, the Court will again dismiss Davis' remaining retaliation claims with prejudice.

## III.    CONCLUSION

For the foregoing reasons, Davis' Title VII and NJLAD retaliation claims will be DISMISSED WITH PREJUDICE. In light of that decision, the parties' pending summary judgment motions are moot and will be denied as such. (Doc. Nos. 88, 89, 90.) Finally, as the entirety of Davis' complaint has now been dismissed, the Court will order the Clerk of the Court to CLOSE this case. An appropriate form of order accompanies this memorandum opinion.

Dated: October 18, 2010

                                                      /s/ Garrett E. Brown, Jr.
                                                      GARRETT E. BROWN, JR., U.S.D.J.